06-1397-cv
Sharkey v. Quarantillo

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: October 29, 2007                    Decided: September 3, 2008)

Docket No. 06-1397-cv

_____

FELIPA SHARKEY,

Plaintiff-Appellant,

v.

ANDREA QUARANTILLO,[1]

Defendant-Appellee.

_____

Before: MINER, LEVAL, AND POOLER, Circuit Judges.

_____

Appeal from the United States District Court for the Southern District of New York

(Crotty, J.) granting defendant-appellee's motion to dismiss for lack of subject matter

jurisdiction.  Because the complaint alleged that the U.S. Citizenship and Immigration Services

had granted lawful permanent resident status to the plaintiff then rescinded that status without

following the mandatory regulatory rescission procedures, the District Court had jurisdiction over

---

[1]  Andrea Quarantillo, who has succeeded Mary Ann Gantner as the New York District Director of the United States Citizenship and Immigration Services ("CIS"), is automatically substituted as the defendant-appellee. See Fed. R. App. P. 43(c)(2).

the complaint under the Administrative Procedure Act.  Cf. Firstland Int'l, Inc. v. INS, 377 F.3d 127 (2d Cir. 2004).

REVERSED and REMANDED.

> DAVID KWANG SOO KIM (Matthew L. Guadagno, Kerry W. Bretz, Jules E. Coven, on the brief), Bretz & Coven, LLP, New York, NY, for Appellant Felipa Sharkey.
>
> F. JAMES LOPREST, Jr., Special Assistant United States Attorney (David S. Jones, Assistant United States Attorney, of counsel, on the brief) for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee Andrea Quarantillo.

POOLER, Circuit Judge:

Plaintiff-appellant Felipa Sharkey appeals from the January 25, 2006, judgment of the United States District Court for the Southern District of New York (Crotty, J.) granting defendant-appellee's motion to dismiss for lack of subject matter jurisdiction.  We hold that the district court erred by dismissing the complaint for lack of subject matter jurisdiction.  The following factual allegations, which we assume to be true for purposes of considering this appeal, are drawn from Sharkey's complaint.

BACKGROUND

Felipa Sharkey is a native and citizen of the Dominican Republic and a resident of New York City.  She entered the United States without inspection in 1994 and married a U.S. citizen, Anthony Sharkey, in January 1995.  In April 1995, Mr. Sharkey submitted on his wife's behalf an

2

Immigration and Naturalization Service ("INS") form I-130,[2] which is a petition to classify an alien as an "immediate relative" of a United States citizen. Concurrent with Mr. Sharkey's I-130 petition, Mrs. Sharkey filed an INS form I-485, which is an application for adjustment of immigration status to that of a lawful permanent resident ("LPR").[3] The INS issued notices requiring Mr. and Mrs. Sharkey to appear at its New York District Office to be interviewed in conjunction with the I-130 visa petition and the I-485 adjustment application. Following the interview in November 1996, an INS officer recommended further investigation into the bona fides of their marriage. On November 29, 2001, District Adjudications Officer ("DAO") Kinosewitz interviewed Mr. and Mrs. Sharkey in order to ascertain whether they had entered into a bona fide marriage. At the end of the interview, according to Sharkey's allegations, the DAO decided to adjust Sharkey's status to that of an LPR and memorialized this decision by placing a temporary I-551 stamp on her passport. The stamp reads: "Processed for I-551. Temporary Evidence of Lawful Admission for Permanent Residence Valid Until __ Nov 29 2002. Employment Authorized." The DAO wrote "IR-6 NYC 11-29-01" on the stamped passport.

A year later, on or about November 29, 2002, Sharkey went to the New York district office of the INS to renew the I-551 stamp on her passport. The DAO who saw her on the visit manually crossed out the I-551 stamp and wrote "cancelled with prejudice" above the seal on the

---

[2] "[T]he then-Immigration and Naturalization Service . . . has since ceased to exist as an independent agency, see Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002) . . . ." United States v. Ceballos, 340 F.3d 115, 118 (2d Cir. 2003).

[3] Under 8 U.S.C. §1255(i), one who entered the U.S. illegally may apply for adjustment of status if an I-130 petition was filed on his or her behalf before April 30, 2001.

stamp.  Sharkey has not yet received her Alien Registration Card or any other suitable evidence of her alleged LPR status.

On June 14, 2005, Sharkey filed an action in the United States District Court for the Southern District of New York suing the District Director ("the Director") of the New York District of the United States Customs and Immigration Services ("USCIS") in her official capacity.  Sharkey argued that her status was adjusted to that of an LPR when, on November 29, 2001, the immigration officer reviewing her case decided to adjust her status.  As evidence that the immigration official decided to adjust her status, Sharkey appended to her complaint a copy of the temporary I-551 stamp placed on her passport, which reads "Processed for I-551. Temporary Evidence of Lawful Admission for Permanent Residence Valid Until __November 29 2002."[4]  She argued that by regulation, "in the absence of countervailing evidence," a "passport[] . . . endorsed to show admission for permanent resident status . . . will be regarded as establishing lawful admission for permanent residence," 8 C.F.R. § 103.2(b)(17).  At oral argument, the

---

[4]  Although the standardized stamp is marked 'temporary' and contains an expiration date, it is temporary evidence of a <u>permanent</u> status.  A leading treatise explains the process:

> Upon approving the application, the USCIS grants the applicant the status of lawful permanent resident . . . . A permanent resident card (Form I-551, formerly I-151), popularly known as the green card, is eventually delivered to the applicant as evidence of lawful admission for permanent residence. As such delivery may take months, the interviewing officer places an endorsement of the approval in the applicant's passport as temporary evidence of residence to facilitate foreign travel and return to the United States.  That endorsement, as well as the I-551 green card, are deemed by the USCIS regulations to be official records for purposes of verifying the grant of lawful residence. . . . The stamped endorsement of approval reads: 'Processed for I-551. Temporary Evidence of Lawful Admission for Permanent Residence Valid Until [date]. Employment Authorized.'

4 Gordon, Mailman, & Yale-Loehr, 51.06 [2] [e] & n. 58.1 (2007) (quoting 8 C.F.R. § 103.2(b)(17)).

government conceded that absent mistake or fraud, an immigration official places a temporary I-551 stamp on an alien's passport only if the officer has decided to adjust the alien's status to a permanent resident.[5]

Sharkey argued that when the agency crossed out the I-551 stamp on her passport and wrote "cancelled with prejudice" above the seal, the agency attempted to rescind her LPR status without following the mandatory statutory and regulatory procedures governing the rescission of LPR status. As a remedy, Sharkey asked the district court to hold unlawful the putative rescission of her LPR status and to order the agency to issue her new documentary evidence of her previously granted LPR status.

In her complaint, Sharkey asserted, inter alia, the following jurisdictional bases for her claims: (a) the Federal Question Statute, codified at 28 U.S.C. § 1331, on the ground that her claims arise under the Administrative Procedure Act ("APA"); (b) the Mandamus Statute, codified at 28 U.S.C. § 1361, on the ground that her claims seek to compel an officer of an United States agency to perform a duty owed to her. She further asserted that under Firstland

---

[5] Sharkey advances two theories of how she obtained her LPR status. First, Sharkey argues that her status was adjusted because the immigration official reviewing her case decided to adjust her status. On this theory, the temporary I-551 stamp is mere evidence of the immigration officer's decision to adjust her status and the determinative issue is still whether the immigration official reviewing her case decided to adjust her status. Second, Sharkey appears to argue that she derived LPR status from the placement of the stamp on the passport, even if the placement of the stamp was inadvertent. On this theory, the mere existence of the stamp might create LPR status, even if the officer reviewing her case decided not to adjust her status. Sharkey offers no support for this latter theory and the cited regulation provides none. The theory has no merit: if the agency can show, through "countervailing evidence," 8 C.F.R. § 103.2(b)(17), that the officer reviewing her case decided not to adjust her status, then Sharkey's status was not adjusted. Accordingly, we assume in the discussion below that Sharkey's theory is that her status was adjusted because the immigration officer reviewing her case decided to adjust her status; at most, if genuine, the I-551 stamp provides rebuttable evidence of this officer's decision.

Int'l, Inc. v. INS, 377 F.3d 127, 130-31 (2d Cir. 2004), the district court had jurisdiction to review her claim that the USCIS attempted to rescind her LPR status without following mandatory statutory and regulatory rescission procedures.

The Director moved to dismiss Sharkey's complaint (a) for lack of subject matter jurisdiction under Fed. R. Civ. Pr. 12(b)(1) or (b) for summary judgment.[6] In support of its motions, the Director provided the district court with copies of Mr. Sharkey's Petition for Alien Relative (I-130 petition) and Ms. Sharkey's adjustment of status application (Form I-485). Based on this evidence, the Director contended that the petitioner, as a matter of law, could not have been granted LPR status, because an approved I-130 petition is a prerequisite to eligibility for adjustment of status and Sharkey's I-130 petition was not approved. In support of this last contention, the director argued that all approved I-130 petitions have an approval stamp on the "action block," but no approval stamp appears on the "action block" on Sharkey's I-130 petition. Thus, the Director contended that even if the immigration official reviewing Sharkey's case decided to adjust her status, this decision had no legal effect or validity because Sharkey was not eligible, as a matter of law, for LPR status. The Director urges us "not to spin a grant of [LPR] status out of what was, at most, an INS Officer's mistake."

In response, Sharkey noted that the action block on the I-130 petition contained a written inscription that had been crossed-out and made illegible. She contended that the crossed-out writings indicated approval of the petition. In addition, she requested discovery to determine

---

[6] In the Director's supporting Memorandum of Law, the Director argued that the suit should be dismissed under Rule 12(b)(6); the district court treated the Director as having moved to dismiss under Rule 12(b)(6); and on appeal, the Director asks that we affirm the dismissal, in the alternative, under Rule 12(b)(6). Following the district court, without objection from Sharkey, we treat the Director as having so moved.

6

why the I-551 stamp on her passport and the writings on her I-130 petition had all been crossed out. She stated that if the administrative record did not contain any more relevant documents, she would request to depose the agents who worked on her case to learn whether the I-551 stamp was placed on her passport because the immigration official reviewing her case had decided to adjust her status or rather was placed on her passport by inadvertence.

The district court dismissed the complaint for lack of subject matter jurisdiction and did not reach the Director's alternative motions. The district court first held that the mandamus statute, 28 U.S.C. § 1361, was not a proper jurisdictional base because mandamus jurisdiction cannot be used to compel a federal official to perform a discretionary act. The district court reasoned that because adjustment of immigration status is wholly discretionary, mandamus jurisdiction cannot be used to "challeng[e] the denial or rescission of adjustment of status."

The district court next held that the case did not arise under the APA because the APA does not apply "to the extent that . . . agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The district court again relied on its finding that decisions to grant, deny, or rescind LPR status are committed to agency discretion by law.

The district court held, finally, that Section 1252(a)(2)(B)(i) of Title 8 strips federal courts of jurisdiction to review "any judgment regarding the granting of relief" under Section 1255 of Title 8, which, inter alia, governs applications for adjustment of status.[7] The district

---

[7] Citing our decision in Sepulveda v. Gonzales, 407 F.3d 59 (2d Cir. 2005) to the district court, the Director abandoned the argument that Section 1252(a)(2)(B) barred review of Sharkey's claim. Notwithstanding this abandonment, the Court decided to apply the jurisdictional bar on the ground that Sepulveda spoke only to the jurisdiction of the Courts of Appeals. However, Section 1252(a)(2)(B) applies to all federal courts and Sepulveda's interpretation of the statute applies to all federal courts. The district court also emphasized that Section 1252(a)(5) vests exclusive jurisdiction in the Courts of Appeals to review final orders of

7

court reasoned that even if this section bars review only of discretionary decisions, the bar nevertheless precluded Sharkey's suit because Sharkey challenged agency action committed to agency discretion.

The district court concluded that Sharkey had failed to allege a proper jurisdictional base for her claims and dismissed her suit for lack of subject matter jurisdiction. In so concluding, the district court relied at each stage of the analysis on its finding that the

> USCIS has non-reviewable discretion with regard to applications for adjustment of immigration status. This wide discretion [encompasses] cases like Sharkey's, which allege unlawful withholding of permanent resident status either by denial of such status in the first instance or by rescission of previously conferred status . . . ."

(emphasis added).

On appeal, Sharkey concedes that the decision to grant or deny LPR status is left to the agency's discretion. She argues, however, that in order to rescind an adjustment to LPR status, the USCIS has a non-discretionary duty to follow the mandatory rescission procedures, as set out in 8 C.F.R. § 246.1-7, which it did not do. Sharkey contends that the alleged rescission is reviewable under Firstland because Section 1252(a)(2)(B) does not strip federal courts of jurisdiction to review an agency's failure to comply with its non-discretionary duty to adhere to procedures for rescinding a prior grant of immigration status. See Firstland, 377 F.3d at 132.

## DISCUSSION

"On appeal from a judgment entered pursuant to Federal Rule of Civil Procedure 12(b)(1), we review conclusions of law de novo." Building and Const. Trades Council of Buffalo, New York and Vicinity v. Downtown Dev., Inc., 448 F.3d 138, 144 (2d Cir. 2006).

---

removal; however, this section is inapplicable because Sharkey does not seek review of a final order of removal.

8

"The party invoking federal jurisdiction bears the burden of establishing" that jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Each factual issue necessary to support subject matter jurisdiction "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. A district court has discretion to hold a hearing to resolve factual disputes that bear on the court's jurisdiction, but where, as here, the case is at the pleading stage and no evidentiary hearings have been held, "[i]n reviewing the grant of a motion to dismiss [under Rule 12(b)(1)] we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001); see Lujan, 504 U.S. at 561 ("At the pleading stage, general factual allegations . . . may suffice [to establish jurisdiction], for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."). And yet, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).[8]

### I. Jurisdiction Under APA

---

[8] There is an initial dispute concerning whether Sharkey's claim that she was granted LPR status is a factual allegation or a legal conclusion couched as a factual allegation. Sharkey alleges that the immigration official who reviewed her case decided to adjust her status. This is a factual allegation, which we must assume to be true. However, Sharkey also argues that the immigration officer's decision had the legal effect of adjusting her status within the meaning of the rescission statute and regulation. In response, the government argues that, even if we assume that the immigration officer decided to adjust Sharkey's status, this decision was void ab initio and without legal effect because Sharkey was not eligible, as a matter of law, to have her status adjusted. We agree that Sharkey's assertion of LPR status raises a mixed question of law and fact. We assume the truth of Sharkey's factual allegations but we do not assume the truth of Sharkey's legal assertion that the facts as alleged had the legal effect of "adjusting" Sharkey's LPR status within the meaning of the rescission statute and regulation. In any event, very little turns on this distinction for purposes of this appeal.

9

The principal claims in Sharkey's complaint are that the USCIS attempted to rescind her LPR status without following mandatory rescission procedures and that the agency unlawfully refused to furnish her with proof of LPR status. Compl. ¶¶ 6, 40, 41. She claims that she was "aggrieved" by these agency actions. Id. ¶ 3 (citing 5 U.S.C. §§ 702, 706). For relief, she seeks a ruling that the rescission was unlawful, id. Prayer for Relief ¶ 1, and an order compelling USCIS to provide her with proof of her LPR status, id. Prayer for Relief ¶ 2. The first type of relief is made available by Section 706(2) of the APA, which requires a reviewing court "to hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D). The second form of relief is made available by Section 706(1) of the APA, which requires a reviewing court to "compel agency action unlawfully withheld." Id. § 706(1). Sharkey asserts that jurisdiction vests under the Federal Question Statute, 28 U.S.C. § 1331, because her claim "arises under" the APA. Compl. ¶ 2.

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Darby v. Cisneros, 509 U.S. 137, 146 (1993) (quoting 5 U.S.C. § 702). "[T]he 'right of action' in such cases is expressly created by the [APA], which states that 'final agency action for which there is no other adequate remedy in a court [is] subject to judicial review,' at the behest of '[a] person . . . adversely affected or aggrieved by agency action.'" Japan Whaling Ass'n v. Am. Cetacean Soc., 478 U.S. 221, 229 n. 4 (1986) (quoting 5 U.S.C. §§ 702, 704). Although the APA does not itself confer subject matter jurisdiction, see Califano v. Sanders, 430 U.S. 99, 107 (1977), the Federal Question Statute, 28 U.S.C. § 1331, confers

10

jurisdiction over a suit that "arises under" a "right of action" created by the APA, see Bowen v. Massachusetts, 487 U.S. 879, 891 n.16 (1988) ("[I]t is common ground that if review is proper under the APA, the District Court ha[s] jurisdiction under 28 USC § 1331."). Because Section 1331 confers jurisdiction on the district courts, a suit that arises under the APA is properly brought in district court.

### I.A Statutory Preclusion of Judicial Review

In determining whether a suit can be brought under the APA, "[w]e begin with the strong presumption that Congress intends judicial review of administrative action." Bowen v. Mich. Academy of Family Physicians, 476 U.S. 667, 670 (1986); see also, e.g., Furlong v. Shalala, 238 F.3d 227, 233 (2d Cir. 2001). There are, however, many threshold limitations to judicial review under the APA. To begin, Section 701(a)(1) provides that the APA review provisions do not apply "to the extent that . . . statutes preclude judicial review." 5 U.S.C. § 701(a)(1). The Supreme Court has emphasized, however, that statutory limitations on judicial review of agency action should be interpreted narrowly in light of the APA's strong presumption in favor of judicial review. See Bowen, 476 U.S. at 670 ("[J]udicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress."); INS v. St. Cyr, 533 U.S. 289, 298 (2001) (applying "the strong presumption in favor of judicial review of administrative action"). This strong presumption requires that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review [of administrative action]." Bowen, 476 U.S. at 670 (internal quotation marks omitted).

The district court determined that Section 1252(a)(2)(B) of Title 8 expressly precludes

11

review of Sharkey's claims. Sharkey makes two claims under the APA: a claim under Section 706(2) that the agency unlawfully rescinded her LPR status without following mandatory procedures and a claim under Section 706(1) that the agency has unlawfully withheld providing her with proof of her LPR status. In order for Sharkey to prevail on either claim, she must first persuade the district court that her status was "adjusted" to that of an LPR within the meaning of the rescission statute and regulation. If no adjustment was made, her entire suit necessarily fails. In this respect, establishing that her status was adjusted is a necessary element of both her claims for relief. Thus, we must determine, inter alia, whether any statute strips the district court of jurisdiction to determine <u>whether</u> an alien's status was adjusted to that of an LPR. For when Congress strips federal courts of jurisdiction to hear a <u>necessary</u> element of a litigant's claim for relief, federal courts are left with no jurisdiction to hear the claim at all. We therefore must determine whether Section 1252(a)(2)(B) bars review of: (a) Sharkey's assertion that she was previously granted LPR status; (b) her claim that the alleged rescission was unlawful; or (c) her claim that she is owed proof of that status. We consider each in turn.

### 1.A (i) Jurisdiction to Determine whether Sharkey had been Granted LPR status

We first address whether Section 1252(a)(2)(B)(i) strips the district court of jurisdiction to determine <u>whether</u> Sharkey's status was adjusted to that of an LPR. Section 1252(a)(2)(B)(i) provides, in relevant part, that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 of this title." 8 U.S.C. 1252(a)(2)(B)(i). Section 1255 governs the process of granting LPR status. The question, therefore, is whether the district court, which is jurisdictionally barred from reviewing "any judgment regarding the granting" of LPR status, may nevertheless determine <u>whether</u> such a grant occurred.

12

In Subhan v. Ashcroft, the Seventh Circuit, discussing a similar question, interpreted Section 1252(a)(2)(B)(i) as precluding review, in relevant part, only of "a judgment denying a request for adjustment of status." 383 F.3d 591, 594 (7th Cir. 2004). This accords with our decision in Sepulveda v. Gonzales, in which we held that "8 U.S.C. § 1252(a)(2)(B) does not strip courts of jurisdiction to review nondiscretionary decisions regarding an alien's eligibility for the relief specified in 8 U.S.C. § 1252(a)(2)(B)(i)." 407 F.3d 59, 62-63 (2d Cir. 2005) (footnote omitted) (emphasis added). Sharkey does not seek review of a denial of her application for LPR status. Rather, she seeks judicial recognition that her application was approved. In order to determine whether Sharkey's status was adjusted, the district court need only address whether the immigration officer reviewing Sharkey's case was empowered to adjust Sharkey's status and, if so, whether the officer decided to adjust Sharkey's status. In the course of this enquiry, the district court will not subject to judicial review any discretionary decision by the agency. The court will simply seek to determine what decision was made, not whether the decision was correct or a proper exercise of discretion. Thus, the Section 1252(a)(2)(B)(i) bar does not apply.[9]

---

[9] There is a second reason why Section 1252(a)(2)(B)(i) cannot be interpreted to bar judicial review of whether LPR status was granted. In the removal context, Section 1252(e)(2)(C) explicitly empowers district courts to make this determination. See 8 U.S.C. § 1252(e)(2)(C) (providing that in the removal context, a district court may decide "whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence."). Significantly, the jurisdictional bar in Section 1252(a)(2)(B)(i)–unlike the jurisdictional bars in the adjacent Section 1252(a)(2)(A)--makes no exception for Section 1252(e) determinations. Cf. 8 U.S.C. § 1252(a)(2)(A)(i)-(iv) (specifically exempting determinations made under Section 1252(e) from its jurisdictional bar). Thus, if Section 1252(a)(2)(B)(i) were interpreted to bar consideration of whether an alien had been granted LPR status–as the Director now maintains and the district court found–then Section 1252(a)(2)(B)(i) would bar courts from making the very type of determination explicitly made available by Section 1252(e)(2)(C). This confirms our conclusion that Section 1252(a)(2)(B)(i) was not meant to bar this type of determination.

*1.A (ii) Jurisdiction to Determine Sharkey's Unlawful Rescission Claim*

We next address whether Section 1252(a)(2)(B) strips the district court of jurisdiction to review whether the agency was required to hold a rescission hearing prior to rescinding Sharkey's status. The rescission regulation provides in relevant part:

> If it appears to a district director that a person residing in his or her district was not in fact eligible for the adjustment of status made in his or her case . . . a proceeding <u>shall be commenced</u> by the personal service upon such person of a notice of intent to rescind, which shall inform him or her of the allegations upon which it is intended to rescind the adjustment of his or her status.

8 C.F.R. § 246.1 (emphasis added) (implementing 8 U.S.C. § 1256(a)).

For reasons similar to those outlined above, Section 1252(a)(2)(B)(i) does not bar the district court from deciding Sharkey's unlawful rescission claim because the agency has a <u>non-discretionary</u> duty to commence rescission procedures prior to rescinding LPR status, <u>see</u> 8 C.F.R. § 246.1.

The jurisdictional bar in Section 1252(a)(2)(B)(ii) does not apply either. That section bars review, in relevant part, of "any <u>other</u> decision or action . . . the <u>authority</u> for which is specified to be in the discretion of the Attorney General or Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).

We have discussed the applicability of Section 1252(a)(2)(B)(ii) to circumstances very similar to those present in this case. <u>See</u> <u>Firstland Int'l, Inc.</u>, 377 F.3d 127. In <u>Firstland</u>, the immigration agency attempted to revoke its approval of an immigrant visa petition on the ground that the petitioner was never eligible for that immigrant visa. <u>Id.</u> at 129. The agency attempted to revoke the visa under the putative authority of 8 U.S.C. § 1155, which provides, in relevant part, that the Attorney General "may, at any time, for what he deems to be good and sufficient

cause," revoke a visa. However, the since-repealed statute provided that in order for a revocation of this type of visa to be effective, the agency was required to notify the alien prior to his departure for the United States. Id. at 130. The immigrant brought suit in district court, arguing that the immigration agency failed to notify him of the revocation prior to his arrival in the United States, in violation of the since-repealed statutory notice requirements. Id. The District Court dismissed the suit under Section 1252(a)(2)(B)(ii), and we reversed. We held that "although the substance of the decision that there should be a revocation is committed to the discretion of the Attorney General, Section 1155 establishes mandatory notice requirements that must be met in order for the revocation to be effective, and courts retain jurisdiction to review whether those requirements have been met." Id. at 131. We reasoned that because the agency did not follow the (since-repealed) statutory requirements for communicating its decision, the "INS had no statutory basis for its revocation decision" and, therefore, the decision was not "specified . . . to be in the discretion of the Attorney General." Id. at 132.

Similarly, here, the alleged rescission was not performed in accordance with the mandatory rescission procedures, which require formal proceedings, and a hearing upon request, prior to rescission of LPR status, see 8 C.F.R. § 246.1. Thus, the alleged rescission was not "specified . . . to be in the discretion of the Attorney General." Firstland, 377 F.3d at 132.

In an important respect, Sharkey's alleged case is much stronger than the petitioner's case in Firstland: it is especially important that the requisite rescission procedures are followed in the context of rescinding LPR status because heightened procedural protections are likely required by the Due Process Clause when an LPR's resident status is threatened. See Ali v. Reno, 22 F.3d 442, 448-49 (2d Cir. 1994) (noting that, even absent regulatory requirements, the Due Process

15

Clause would likely require formal proceedings prior to rescinding LPR status); see also Landon v. Plasencia, 459 U.S. 21, 32 (1982) ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly"); Kwong Hai Chew v. Colding, 344 U.S. 590, 596 (1953) ("It is well established that if an alien is a lawful permanent resident of the United States and remains physically present there, . . . [h]e may not be deprived of his life, liberty or property without due process of law"); Di Pasquale v. Karnuth, 158 F.2d 878, 879 (2d Cir. 1947) (Hand, J.) (stating that a lawful permanent resident has a "vested interest in his residence").

### I.A (iii) Jurisdiction to Review Failure to Provide Proof of LPR Status

Finally, because the agency has a non-discretionary duty to provide LPRs with proof of their status, see Etuk v. Slattery, 936 F.2d 1433, 1448 (2d Cir. 1991) (holding that the relevant statutes and regulations "require that LPRs be provided with documentation of their rightful legal status" (emphasis added)), Section 1252(a)(2)(B) does not strip the district court of jurisdiction to review whether Sharkey is owed proof of her status.

### I.B Threshold Limitations on APA Causes of Action

Although there is a strong presumption in favor of judicial review of agency action, there are threshold limitations on the scope of APA review: (a) review under the APA is limited to review of "final agency action," 5 U.S.C. § 704, see Air Espana v. Brien, 165 F.3d 148, 151-154 (2d. Cir. 1999); (b) final agency action is not subject to judicial review under the APA to the extent that such action is "committed to agency discretion by law," 5 U.S.C. 701(a)(2), see Lunney v. United States, 319 F.3d 550, 558 (2d Cir. 2003); and (c) the strong presumption of judicial review can be overcome if Congress, subject to constitutional constraints, implicitly or

explicitly precludes judicial review, see Bowen, 476 U.S. at 673; 5 U.S.C. 701(a)(1).

We have suggested that each of these threshold limitations delimits the subject matter jurisdiction of federal courts. See, e.g., Air Espana, 165 F.3d at 152 ("The APA . . . requirement of finality is jurisdictional."); Riverkeeper, Inc. v. EPA, 475 F.3d 83, 130 (2d Cir. 2007) (accord); Lunney, 319 F.3d at 558 (holding that "there is no jurisdiction" if the challenged action is committed to agency discretion). It is uncertain in light of recent Supreme Court precedent whether these threshold limitations are truly jurisdictional or are rather essential elements of the APA claims for relief.[10] That question takes on significance in this case because the parties and the district court have raised some of these threshold limitations, but not all of them. To the extent the threshold limitations are jurisdictional, we are required to raise them sua sponte; to the extent the threshold limitations are elements of the APA claims for relief going to the merits, the

---

[10] Recently, the Supreme Court appeared to introduce a bright-line rule for determining whether a "threshold limitation on a statute's scope" is jurisdictional or "an element of [a] claim for relief," Arbaugh v. Y & H Corp., 546 U.S. 500, 514-15 (2006); see id. at 515-16 ("If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character."). Relying on this bright-line rule in Arbaugh, the D.C. Circuit, abrogating prior decisions from that circuit, held that the Section 704 requirement of "final agency action" is not jurisdictional. See Trudeau v. FTC, 456 F.3d 178, 183-84 & nn. 6-7 (D.C. Cir. 2006). Other Circuits, in response to Arbaugh, have raised, but declined to answer, this question; and others have reaffirmed their prior holdings that the final agency action requirement is not jurisdictional. See Long Term Care Partners, LLC v. United States, 516 F.3d 225, 231-32 (4th Cir. 2008) (declining to decide issue, but noting that "the continued validity" of cases holding that the final agency action requirement is jurisdictional "has been called into question somewhat by Arbaugh"); Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 33 (1st Cir. 2007) (reaffirming the court's pre-Arbaugh determination that the APA's finality requirement is not jurisdictional); see also Thomas v. Miller, 489 F.3d 293, 298 (6th Cir. 2007) (explaining that Arbaugh "effectively overruled" cases that failed to apply a bright-line clear statement rule for jurisdiction"); Long Term Care Partners, 516 F.3d at 239 (Williams, C.J., concurring) (arguing that Arbaugh has overruled prior holdings of Fourth Circuit that final agency action requirement is jurisdictional).

opposing party's failure to raise the issue waives the objection.  See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) ("[S]ubject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived.  Moreover, courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." (internal quotation marks and citations omitted)); Da Silva v. Kinsho Int'l Corp., 229 F.3d 358, 361 (2d Cir. 2000).   However, because we find that Sharkey has satisfied each of these threshold requirements of an APA action, we need not reach the difficult question of whether these threshold requirements hold the "keys to the kingdom of subject-matter jurisdiction," Eberhart v. United States, 546 U.S. 12, 17 (2005).[11]

### I.B(i) Final Agency Action

"The 'core question' for determining finality is 'whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.'" Lunney, 319 F.3d at 554 (quoting Dalton v. Specter, 511 U.S. 462, 470 (1994)).

> As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process--it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined or from which legal consequences will flow.

Bennett v. Spear, 520 U.S. 154, 177-178 (1997) (internal quotation marks and citation omitted). The Supreme Court has "interpreted the 'finality' element in a pragmatic way."  FTC v. Standard Oil of Cal., 449 U.S. 232, 239 (1980) (internal quotation marks omitted).  In a related setting,

---

[11] To the extent the issues concern essential elements of the plaintiff's claims for relief, we exercise our discretion to raise them sua sponte in order to determine whether there are alternative grounds in the record for granting the defendant's unadjudicated 12(b)(6) motion. See Adeleke v. United States, 355 F.3d 144, 147 (2d Cir. 2004).

drawing on its APA finality jurisprudence, the Supreme Court explained that if an agency has issued a "definitive statement of its position, determining the rights and obligations of the parties," the agency's action is final notwithstanding "[t]he possibility of further proceedings in the agency" on related issues, so long as "judicial review at the time [would not] disrupt the administrative process." Bell v. New Jersey, 461 U.S. 773, 779-80 (1983).

Sharkey alleges that she went to the INS district office in 2002 to renew the I-551 stamp on her passport, whereupon the DAO denied her request for documentation, crossed out the I-551 stamp on her passport, and wrote "cancelled with prejudice" over the seal. Assuming the truth of Sharkey's factual allegations, the agency's acts clearly constituted final agency action.

First, by revoking Sharkey's (allegedly) previously granted LPR status through its inscription of "cancelled with prejudice" on her stamped passport, the agency "consummat[ed its] decisionmaking process" regarding both the revocation[12] and its refusal to provide her with proof of her previously-conferred status.[13] See Reliable Automatic Sprinkler Co. v. Consumer

---

[12] To be sure, the agency contends that, as of the time Sharkey filed suit, the agency was still deliberating whether to grant her application for LPR status. But the agency's current deliberations regarding whether to grant her LPR status are "further proceedings in the agency" on related issues, which do not defeat the finality of the agency's decision to revoke her (allegedly) previously granted status. See Bell, 461 U.S. at 779-80.

[13] Sharkey's 706(1) claim, which challenges the agency's failure to provide her with proof of her LPR status, challenges the agency's failure to act. The Supreme Court has explained that when a plaintiff challenges an agency's failure to act, the challenge is reviewable under the APA "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 65 (2004). Sharkey's complaint falls within the strictures of Norton because the failed act Sharkey challenges is a discrete one that the agency is required to take, see Etuk, 936 F.2d at 1448 (the agency is statutorily required "to provide LPRs . . . with temporary proof of their legal status"). See Sierra Club v. Thomas, 828 F.2d 783, 793 (D.C. Cir. 1987) ("[I]t is apparent that, if an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review").

19

Prod. Safety Comm'n, 324 F.3d 726, 733-34 (D.C. Cir. 2003) (holding that an "unequivocal statement of the agency's position" is sufficient to meet the first requisite for final agency action). Second, the revocation was clearly an action "by which rights or obligations have been determined" and which "directly affect[ed] the parties," Bennet, 520 U.S. at 177-78.

### I.B(ii) Ripeness

The APA requirement of final agency action relates closely to the prudential doctrine of ripeness. "Determining whether administrative action is ripe for judicial review requires us to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S 803, 808 (2003). This claim is ripe for review.

First, because the dispute presents legal questions and there is a concrete dispute between the parties, the issues are fit for judicial decision. See id. at 812. It is true that the factual record is not yet fully developed, and many putatively important pieces of evidence have been crossed out and made illegible, making judicial review potentially difficult. Cf. id. However, as discussed below, discovery may clarify the factual record. Further, because Sharkey's I-551 stamp, if genuine, creates a rebuttable presumption of LPR status, see 8 C.F.R. § 103.2(b)(17), the absence of a clear, accompanying factual record may facilitate, rather than frustrate, judicial review. That is, if the agency does not provide countervailing evidence sufficient to rebut the presumption created by her I-551 stamp–such as testimony by the immigration official who reviewed her case stating he did not intend to adjust her status--then Sharkey might prevail on the current record. Finally, Congress has empowered district courts, sitting in habeas jurisdiction, to determine whether an alien has been granted LPR status, suggesting that this sort of issue is fit

for judicial decision.  See 8 U.S.C. § 1252(e)(2)(C) (providing that in the removal context, a habeas court may decide whether a "petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence").

Second, Sharkey would suffer significant hardship if no court considered the issue.  It is true that Sharkey could renew her application for LPR status if the court withheld review, but that is a far cry from the remedy she seeks.  If Sharkey prevails in all aspects of her APA suit, the court will recognize that she was previously granted LPR status, set aside the unlawful rescission, and order the agency to furnish her with proof of her LPR status.  The mere opportunity for Sharkey to submit to the discretion of the agency a renewed request for LPR status would not relieve the hardship caused by our withholding court consideration of Sharkey's claim that she already has that status.

Thus, the issues are ripe for review.  Cf. McGrath v. Kristensen, 340 U.S. 162, 169 (1950) (holding that a declaratory judgment suit to recognize an alien's residence, and consequent eligibility for citizenship, was ripe for review even though the same issues could be presented on habeas review).[14]

***I.B(iii) Exhaustion***

---

[14]  Relatedly, there is "no other adequate remedy in a court" for Sharkey's claims.  See 5 U.S.C. § 704 (limiting review to "final agency action for which there is no other adequate remedy in a court").  The Supreme Court narrowly construed this limitation to apply only in instances when there are "special and adequate review procedures" that permit an adequate substitute remedy.  See Bowen v. Massachusetts, 487 U.S. 879, 903 (1988).  Although Sharkey, if ordered removed under 8 U.S.C. § 1225(b)(1), could raise her putative LPR status in a habeas petition, see 8 U.S.C. § 1252(e)(2), Sharkey has not been ordered removed and, further, the only remedy available in such a proceeding would be an order requiring a different type of removal hearing, see 8 U.S.C. § 1252(e)(4)(B).  Thus, Section 1252(e) is plainly not a "special and adequate review procedure" sufficient to oust a court of its normal jurisdiction under the APA.  See Bowen, 487 U.S. at 904-07.

Finally, under the APA, "[c]ourts are not free to impose an exhaustion requirement unless the specific statutory scheme at issue imposes such a requirement." Air Espana, 165 F.3d at 151 (internal quotation marks omitted); see Darby, 509 U.S. at 154 (holding that under the APA, the doctrine of exhaustion applies "only when expressly required by statute or when an agency rule requires appeal before [judicial] review and the administrative action is made inoperative pending that review"). The Director has not pointed to any statute or regulation that expressly mandates exhaustion of her claims.

**I.B(iv) Committed to Agency Discretion**

The district judge determined that the challenged actions were committed to agency discretion. Final agency action is not subject to judicial review under the APA "to the extent that such action is committed to agency discretion by law." Lunney, 319 F.3d at 558 (internal quotation marks omitted); see 5 U.S.C. § 701(a)(2). This restriction applies only in "those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410 (1971) (internal citation omitted); see Heckler v. Chaney, 470 U.S. 821, 830 (1985) (restriction applies only if the statute or regulation said to govern the challenged agency action "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion").

As we have explained, the court need not subject the agency's exercise of discretion to judicial review in order to resolve Sharkey's suit.

**Conclusion: Jurisdiction Vests under APA**

Therefore, absent some other reason to oust the court of its jurisdiction, jurisdiction vests in the district court under the APA and the federal question statute. Our conclusion to allow

22

review is buttressed by the fact that the statutory scheme provides no alternative mechanism for judicial review of Sharkey's claims. See McNary, 498 U.S. at 496 ("[G]iven our well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action, . . . it is most unlikely that Congress intended to foreclose all forms of meaningful judicial review" (internal citations omitted)).

### II. Other Possible Bars to Subject Matter Jurisdiction

The Director argues on appeal that the suit is barred by sovereign immunity considerations. The argument is without merit. Section 702 of the APA "waives the federal government's sovereign immunity in actions [for non-monetary relief against an agency or officer thereof] brought under the general federal question jurisdictional statute." Lunney, 319 F.3d at 557-58; see 5 U.S.C. § 702.

The Director next argues that the court should decline to exercise jurisdiction in deference to the judiciary's historical practice of refusing to interfere with any aspect of visa issuance. The argument is best couched as a separation of powers argument. The D.C. Circuit recently rejected a similar argument, holding that the judiciary has the power to determine whether an alien has LPR status, even absent any INS hearing on the matter. See United States v. Yakou, 428 F.3d 241, 250 (D.C. Cir. 2005) ("The United States's suggestion that a federal court's determination of [the petitioner's] status interferes with the separation of powers under which immigration matters are largely within the province of the Executive Branch, obscures the fact that the court is not changing [the alien's] LPR status; rather, the court is looking . . . to 8 U.S.C. § 1101(a)(20) as interpreted by the BIA to determine whether [the alien's] LPR status changed over ten years ago when he departed the United States for more than a temporary visit abroad.).

23

Similarly here, the court would not be changing Sharkey's LPR status; rather, it would be finding facts, and applying law, to determine whether she was granted that status in the first place. Moreover, by providing that a reviewing court, in the removal context, can determine whether a petitioner has LPR status, see 8 U.S.C. § 1252(e)(2), Congress has made clear that courts may determine whether an alien has LPR status without violating the separation of powers.

### III. Motion for dismissal under 12(b)(6)

"Although the district court erroneously dismissed the action pursuant to Rule 12(b)(1), we could nonetheless affirm the dismissal if dismissal were otherwise proper based on failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997); see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006) (determining that district court's Rule 12(b)(1) dismissal was erroneous, then holding that dismissal under Rule 12(b)(6) would have been erroneous too); Adeleke v. United States, 355 F.3d 144, 147 (2d Cir. 2004) (reviewing court may affirm district court decision on any ground in the record). The Director asks us to so proceed because "the Court should reject Sharkey's attempt to spin a grant of lawful permanent resident status out of what was, at most, an INS officer's mistake" in placing a Temporary I-551 stamp on her passport.

In order to state a claim upon which relief can be granted, a complaint need only plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). We continue to assume the truth of Sharkey's allegations, including her allegation that the immigration officer decided to adjust her status and her allegation that her adjustment application and her husband's I-130 petition were filed

24

concurrently.

The Director argues that rescission hearings were unnecessary because, as a matter of law, regardless of the immigration officer's decision, Sharkey's status could not have been adjusted to LPR since Sharkey was not eligible for that status. Specifically, the Director argues that Sharkey, as an alien who entered the country unlawfully, was not eligible for LPR status unless and until her husband's Alien Relative petition (Form I-130) was approved. See 8 U.S.C. §§ 1255(i)(1)(B)(i) & (i)(2)(B). The Director argues, further, that the record evidence establishes that the I-130 petition was not approved, since the form contains no approval stamp in the "action stamp" block. Thus, according to the Director, even if the immigration official reviewing Sharkey's case decided to adjust her status, Sharkey's ineligibility for that status rendered the decision invalid ab initio. This argument is unavailing at this stage of the litigation for two reasons.

First, Sharkey points out that the action block in the Form I-130 contains writing that has been crossed out and made illegible. She argues that this suggests that the petitions were initially approved, but that the evidence of their approval was later crossed out. She has asked for discovery on these issues.[15] The crossed-out inscriptions create a factual issue, which it would be

---

[15] In response to the Director's motions for dismissal under 12(b)(1) and summary judgment, Sharkey asked for limited discovery from the immigration officials involved in her case to explain whether the petitions were initially granted and, if so, when and why the approval was rescinded; she also sought an affidavit from DAO Kinosewitz to explain the placement of the I-551 stamp on her passport. In a suit under the APA, discovery rights are significantly limited. The respondent agency must turn over the whole administrative record as it existed at the time of the challenged agency action, but normally no more. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 419-20 (1971), abrogated on other grounds, Califano v. Sanders, 430 U.S. 99 (1977); see also Fl. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("The APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred."). However, there is

25

inappropriate to resolve in dismissing an action under Rule 12(b)(6). See Bell Atlantic Corp., 127 S.Ct. at 1965 ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989))).

Second, and more important, the Director's argument proves too much. According to the Director, there is no need for a rescission hearing in any case where the alien was not in fact eligible for the adjustment. The proffered reason is that, if the alien was not eligible for the adjustment, no adjustment could have been made as a matter of law, and, therefore, there was no legally conferred status to rescind. If this were correct, the rescission statute and regulation would be nullities, because, together, they call for a rescission hearing, within five years,[16] in precisely those circumstances in which the Director contends no hearing is necessary: i.e., when the alien was "not in fact eligible" for the adjustment, see 8 U.S.C. § 1256(a); 8 C.F.R. § 246.1 ("[A rescission] proceeding shall be commenced" when it appears to the Director that the alien "was not in fact eligible for adjustment of status." (emphases added)). In effect, the Director seeks to avoid rescission hearings by asserting the very fact (i.e., the alien's ineligibility) that the agency is required to prove during a rescission hearing, see Kim v. Meese, 810 F.2d 1494, 1496 (9th Cir. 1987) (during a rescission hearing, the agency must prove that the alien was "ineligible

---

an exception whereby "the court may require the administrative officials who participated in the decision to give testimony explaining their action" when this is "the only way there can be effective judicial review." Overton Park, 401 U.S. at 420. In any event, where, as here, the agency may have the burden to produce countervailing evidence, see 8 C.F.R. § 103.2(b)(17), the agency's failure to produce evidence may be counted against the agency.

[16] See Zaoutis v. Kiley, 558 F.2d 1096, 1100 (2d Cir. 1977) ("If . . . no notice to rescind is filed within the five-year period, the alien may justifiably rely on his adjusted status.").

for adjustment of status"). This would allow the Director to avoid rescission hearings in every case. We cannot accept the Director's interpretation of the statute and the regulation, which would render them nullities.[17]

For these reasons, we conclude that Sharkey's complaint states two APA claims upon which relief can be granted. However, because Sharkey's claims for mandamus duplicate her claims under the APA, and because we hold that Sharkey's APA claims survive the Director's 12(b)(1) and 12(b)(6) motions to dismiss, we affirm the district court's dismissal of the mandamus claims on the alternative ground that there is another "adequate remedy available." See Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir.1989).

Finally, the Director asks us to grant its motion for summary judgment. Because there are outstanding factual disputes, and following the sound practice of not adjudicating a summary judgment motion in the first instance, we decline to do so. See Atl. States Legal Found., Inc. v. Pan Am. Tanning Corp., 993 F.2d 1017, 1022 (2d. Cir. 1993).

**CONCLUSION**

Because the district court erred in holding that it lacked subject matter jurisdiction to hear this action, and because the complaint states a claim upon which relief can be granted, we reverse and remand for proceedings consistent with this opinion.

---

[17] Nothing in De La Rosa v. U.S. Dep't of Homeland Sec., 489 F.3d 551 (2d Cir. 2007) (per curiam), is to the contrary. In De La Rosa, we addressed a very different question–an LPR's continuing eligibility for a § 212(c) waiver–and we did not discuss or mention the rescission statute or regulation. Further, the type of mistake here alleged by the Director, if true, was the result of the agency's mistaken insertion of an I55(1) stamp, despite nonapproval of an underlying petition that Sharkey concurrently filed, not the result of the "alien['s] [failure to] compl[y] with the substantive legal requirements in place at the time she was admitted for permanent residence," De La Rosa, 489 F.3d at 553 (emphases added).