**Lawrence E. TUCKER, Plaintiff,**

v.

**Tom RIDGE, Secretary of the Department of Homeland Security, Defendant.**

**No. 4:03–CV–325.**

United States District Court, E.D. Texas, Sherman Division.

June 2, 2004.

W.D. Masterson, III, Kilgore & Kilgore, Dallas, TX, for Plaintiff.

Ruth Harris Yeager, US Attorney's Office, Tyler, TX, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

SCHELL, District Judge.

This matter is before the court on "Defendant's Motion to Dismiss Plaintiff's First Amended Complaint or in the Alternative Motion for Summary Judgment" ("Defendant's Motion") [Dkt. # 13], filed March 8, 2004. The court also has Plaintiff's response [Dkt. # 18], filed April 6, 2004, and Defendant's reply [Dkt. # 21], filed April 30, 2004. After consideration of the briefing, evidence, and applicable law, the court is of the opinion that Defendant's motion should be GRANTED.

### I. BACKGROUND

Plaintiff Lawrence E. Tucker ("Tucker") claims that he was discriminated against and unlawfully denied a position with the United States Transportation Security Administration ("TSA") because of a physical disability. Pl.'s First Am. Compl., ¶ 5.02.

The TSA is the federal agency created to improve transportation security after September 11, 2001. 49 U.S.C. § 114. To accomplish this goal, the TSA replaced private sector baggage screeners with newly hired and trained federal security screeners. 49 U.S.C. § 44935(e) & (f). Due to the importance of this task, Congress established certain minimum mental and physical qualifications an applicant must exhibit in order to be considered for a security screening position with the TSA. *Id.* Apart from basic mental and educational requirements, the statute requires that security screeners "demonstrate daily a fitness for duty without any impairment due to illegal drugs, sleep deprivation, medication, or alcohol" and "possess basic aptitudes and physical abilities, including color perception, visual and aural acuity, physical coordination, and motor skills." *Id.* These skills include the ability to "efficiently and thoroughly manipulate and handle such baggage, containers, and other objects subject to security processing." *Id.* Additionally, TSA security screening personnel must "meet such other qualifications as the Under Secretary [of Transportation] may establish." 49 U.S.C. § 44935(e)(2)(A)(iv).

The TSA has submitted evidence regarding the other qualifications the Under Secretary has established. The court has before it the sworn declaration of Dr. Elizabeth B. Kolmstetter, who serves as the Deputy Assistant Administrator for Workforce Performance Solutions in the Office of Workforce Performance and Training of the TSA. Def.'s Mot., Ex. 1, ¶ 1. Her responsibilities include "the identification and validation of the skill standards and the development of an assessment process for the hiring of TSA security screening personnel." *Id.*, ¶ 4. According to Dr. Kolmstetter, she supervised the development of the TSA's "Transportation Security Screener Medical Guidelines and Physical Assessment Standards and Procedures."[1] *Id.*, ¶ 10. The standards set forth in this document indicate that transportation security screeners must be able to "[l]ift baggage weighing 15–70 lbs .... from the floor to the Explosive Detection System ... conveyer belt 8–12 inches high onto baggage conveyer" and must be able to "[c]arry baggage weighing 15–70 lbs .... from the Explosive Detection System ... conveyer belt to the inspection table [10–50 feet]." *Id.*, Ex. 1–C at 18 (Medical Guidelines).

In her declaration, Dr. Kolmstetter explained why the lifting requirements were deemed necessary for all security screening personnel, including supervisors, stating:

[a]ll TSA's transportation security screeners, at the entry, lead, and supervisory levels, were subject to the same medical qualification of having the medically unrestricted ability to lift and carry up to 70 pounds. The public safety and extraordinary task facing TSA demanded that the entire security screening workforce have the capacity to be deployed wherever needed at our nation's airports.

*Id.*, Ex. 1 at ¶ 14. Additionally, Dr. Kolmstetter stated that "[a]n essential task basic to performing the critical work function of screening baggage in the position of TSA security screener, lead screener, and supervisory screener is the ability to handle, lift, and carry baggage weighing up to 70 pounds." *Id.*

According to Dr. Kolmstetter, the 70-pound requirement was not set arbitrarily. Rather, she states:

1. This document is attached to Dr. Kolmstetter's declaration as Exhibit C.

[t]his requirement that the entire security screening workforce have the medically unrestricted capacity to lift and carry baggage weighing up to 70 pounds is based on data collected during the job analysis data collection. Data were collected at airport site visits through observations and physical weight and measurements taken from actual passenger baggage being handled during the security screening process at our nation's airports. The job analysis demonstrated that this is a very physically demanding job and in order to safely and effectively perform this job, screeners must meet specific medical requirements. An applicant medically restricted from lifting or carrying baggage weighing up to 70 pounds is not qualified to perform the essential function of performing security screening of property and baggage at our nations airports. It would be unsafe to the person, to the traveling public, and to other employees to put a person with such a medical restriction in this position.

*Id.*, Ex. 1 at ¶ 13. Dr. Kolmstetter claims that these requirements were in place in August of 2002. *Id.*, Ex. 1 at ¶ 10. Ultimately, as the court will explain, these requirements were the reason that Tucker was not offered employment with the TSA.

On August 4, 2002, Plaintiff Tucker "reported by pre-screened appointment . . . to be tested for the position of Supervisory Transportation Security Screener[ ]...." Pl.'s First Am. Compl., ¶ 4.02. Based on information contained in the vacancy announcement, Tucker understood that part of his employment screening would include a physical test, in which Plaintiff would have to demonstrate that he could repeatedly lift and carry baggage weighing

up to 40 pounds.[2] *Id.*, ¶ 4.05. Specifically, that vacancy announcement reads:

all applicants will be required to pass tests, interviews, and other evaluations demonstrating that they have the necessary skills and abilities for TSS job performance. These requirements include: . . . Physical abilities (e.g., repeatedly lifting and carrying up to 40 lbs, identifying objects by touch) . . . .

Def.'s Mot., Ex. 1–B at 4.

That the maximum lifting requirement for this position appeared to be 40 pounds was significant to Tucker, because his doctor had imposed on him a lifting restriction of 50 pounds. Pl.'s First Am. Compl., ¶ 4.05. If TSA's maximum lifting requirement were actually 40 pounds, Tucker claims that he would have been able to perform the required tasks. Pl.'s Resp. to Def.'s Mot. at 3.

When Tucker arrived for his physical testing, however, he was informed by the physician conducting his test that he would be required to lift up to 70 pounds. Pl.'s First Am. Compl., ¶ 4.06. "At this point[,] Plaintiff questioned the physician[,] and after going to confer with an associate, she returned to give Plaintiff a form and told Plaintiff that Plaintiff would need to get Plaintiff's doctor to sign a release authorizing Plaintiff to lift up to 70 pounds." *Id.*

Thereafter, Tucker returned home and called an 800 number supplied by the TSA in order to further inquire about the lifting requirement. *Id.*, ¶ 4.07. He alleges that the agent to whom he spoke informed him that he should return to the testing venue and inform the physicians conducting the tests that the vacancy announcement only required him to lift up to 40 pounds. *Id.*

When Tucker returned to the testing center, a TSA employee named Josh Wil-

---

**2.** The vacancy announcement is included as Exhibit B to Defendant's expert's sworn declaration. Def.'s Mot., Ex. 1, Ex. B (Vacancy Announcement).

burn informed him that "he had called Glen Bottomly with Comprehensive Health Services in Vienna, Virginia." *Id.*, ¶ 4.08. Tucker alleges that Bottomly had informed Wilburn that "although the job description was correct in limiting the lifting requirement up to 40 pounds, the rule had arbitrarily been changed to accommodate screeners requiring supervisors to lift up to 70 pounds as well." *Id.*, ¶ 4.08.

At this time, Tucker was not offered employment with the TSA. As of the time Tucker filed his complaint, he was still "diligently" seeking other employment, "but has as yet been unable to obtain any." *Id.*, ¶ 4.11.

Based on these facts, Tucker alleges that "Defendant has discriminated against Plaintiff because of his handicap/disability with respect to the terms and conditions of his employment by refusing to give Plaintiff employment unless Plaintiff provided a statement from Plaintiff's physician clearing Plaintiff to lift up to 70 pounds although the supervisory transportation security screener vacancy announcement under which Plaintiff applied only required Plaintiff to lift up to 40 pounds." *Id.*, ¶ 5.02. Tucker claims that "Defendant has thereby intentionally engaged in unlawful employment practices prohibited by The Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791(b) and 794, and EEOC regulations 29 CFR § 1614.101 *et seq.*" *Id.* Finally, Tucker avers that "this discrimination was done by Defendant with intentional malice or with reckless indifference to Plaintiff's protected rights." *Id.*, ¶ 5.04.

## II. LEGAL STANDARD

An order granting a Rule 12(b)(6) motion to dismiss is "appropriate where 'it appears beyond doubt that the plaintiff can provide no set of facts in support of his claim which would entitle him to relief.'"

*Bauer v. Texas,* 341 F.3d 352, 356 (5th Cir.2003) (citing *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "In making this determination, the court accepts as true all allegations contained in the plaintiff's complaint and all reasonable inferences are to be drawn in favor of the plaintiff's claims." *Id.* (citing *Kaiser Aluminum & Chem. Sales Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982)).

## III. ANALYSIS

■ Plaintiff has failed to state a claim upon which relief may be granted because the Rehabilitation Act is superceded by the Aviation Transportation Security Act ("ATSA"), which grants the Under Secretary of Transportation the authority to establish hiring criteria for security screening personnel. 49 U.S.C. § 44935(e)(3). Consistent with the ATSA's plain language, the criteria that the Under Secretary establishes are neither subject to review nor challenge under the Rehabilitation Act.

In the ATSA, Congress stated that, *"notwithstanding any provision of law,"* all security screeners must "be able to efficiently and thoroughly manipulate and handle such baggage, containers, and other objects subject to security processing." 49 U.S.C. § 44935(f)(1)(B) (emphasis added). Moreover, Congress stated that, *"notwithstanding any provision of law,"* security screening personnel must, at a minimum, "meet such other qualifications *as the Under Secretary may establish.*" 49 U.S.C. § 44935(e)(2)(A) (emphasis added). The ATSA expressly grants the Under Secretary the authority to "develop a security screening personnel examination for use in determining the qualification of individuals seeking employment as security screening personnel." 49 U.S.C. § 44935(e)(3).

Although Tucker takes issue with the qualifications established by the Under Secretary, this dissatisfaction is insufficient to establish a violation of the Rehabilitation Act, which is plainly and unambiguously preempted by the ATSA. 49 U.S.C. § 44935(e)(2)(A). Because the ATSA explicitly states that the Under Secretary may establish the hiring criteria "notwithstanding any provision of law," the hiring criteria are not subject to challenge under the Rehabilitation Act. 49 U.S.C. § 44935(e)(2)(A).

When used by Congress, the word "notwithstanding" overrides any specified, contrary provisions of law. *Shomberg v. United States*, 348 U.S. 540, 547–48, 75 S.Ct. 509, 99 L.Ed. 624 (1955); *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993). When Congress states that a law will apply "notwithstanding *any* provision of law," the court must assume that Congress means what it says—namely, that the law applies even when it would violate otherwise applicable statutes.[3] Here, Congress has preempted "any provision," which means all statutory provisions. The Rehabilitation Act is one of these.

In reading the plain language of a statute, the "cardinal principle of statutory construction is to save and not destroy." *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (citations omitted); *accord TRW, Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001). The duty of a court interpreting a statute is to "give effect, if possible, to every clause and word of a statute." *Id.* For the court to allow Plaintiff to proceed with his Rehabilitation Act claim, the court would have to ignore the "notwithstanding" clause of the ATSA. Because the court cannot ignore provisions of the ATSA, Tucker's claims fail as a matter of law.

This court is not alone in finding that a "notwithstanding" clause in a subsequent statute may override the Rehabilitation Act. In *Campbell v. Minneapolis Public Housing Authority*, the Eighth Circuit held that a clause reading "[n]otwithstanding any other provision of law" in the Housing Opportunity Program Extension Act of 1996 indicated Congress's intent that the Extension Act supercede otherwise applicable statutes, including section 504 of the Rehabilitation Act. 168 F.3d 1069, 1075 (8th Cir.1999).

Even assuming the truthfulness of Tucker's allegations and drawing all reasonable inferences in his favor, the court finds that Congress has shielded the Under Secretary's hiring criteria from Tucker's Rehabilitation Act claims.

## IV. CONCLUSION

For the foregoing reasons, the court finds that Plaintiff "can provide no set of facts in support of his claim which would entitle him to relief." *Bauer*, 341 F.3d at 356 (citing *Conley*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80). Consequently, the TSA's motion to dismiss Tucker's complaint is GRANTED. Accordingly, the TSA's motion for summary judgment is DENIED as MOOT. Plaintiff's First Amended Complaint is DISMISSED. It is so ORDERED.

---

**3.** It is well settled that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (citations omitted). "When the words of a statute are unambiguous, then, this first canon [of interpretation] is also the last: 'judicial inquiry is complete.'" *Id.* (citations omitted).