07-4095-cv
Conyers v. Hawley

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: December 9, 2008                    Decided: March 3, 2009)

Docket No. 07-4095-cv

VINCENT CURTIS CONYERS,

*Plaintiff-Appellant*,

—v.—

GALE D. ROSSIDES, in her official capacity as Acting Administrator, Transportation Security Administration, United States Department of Homeland Security,[*]

*Defendant-Appellee*.

Before:

KEARSE, RAGGI, and LIVINGSTON, *Circuit Judges*.

_____

Appeal from a judgment of the United States District Court for the Eastern District of New York (Sandra J. Feuerstein, *Judge*) dismissing plaintiff's claims under the Administrative Procedure Act, the Veterans Employment Opportunities Act, and the Fifth

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Administrator Gale D. Rossides is automatically substituted for Kip Hawley as defendant in this case.

1

and Fourteenth Amendments to the United States Constitution arising out of plaintiff's unsuccessful application for a security screener position with the Transportation Security Administration. The district court correctly determined that it lacked jurisdiction to review plaintiff's Administrative Procedure Act claim, and we hold that defendant is entitled to judgment on the pleadings with respect to plaintiff's Veterans Employment Opportunities Act and constitutional claims.

AFFIRMED.

---

VINCENT CURTIS CONYERS, *Plaintiff-Appellant*, *pro se*.

THOMAS A. MCFARLAND, Assistant United States Attorney (Varuni Nelson, Assistant United States Attorney, *of counsel*), *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Central Islip, New York, *for Defendant-Appellee*.

---

REENA RAGGI, *Circuit Judge*:

Plaintiff Vincent Curtis Conyers, proceeding pro se, appeals from a July 30, 2007 judgment of the United States District Court for the Eastern District of New York (Sandra J. Feuerstein, Judge), dismissing his complaint against the Administrator of the Transportation Security Administration ("TSA"), for defendant's 2002 refusal to hire plaintiff as an airport security screener. We agree that the district court lacked jurisdiction to review plaintiff's Administrative Procedure Act claim, and we hold that defendant is

2

entitled to judgment on the pleadings with respect to plaintiff's Veterans Employment Opportunities Act and constitutional claims. We therefore affirm.

## I.   Background

We briefly review the relevant statutory framework before discussing the factual background and legal merits of Conyers's appeal.

### A.   The Aviation and Transportation Security Act

Following the "terrorist hijacking and crashes of passenger aircraft on September 11, 2001, which converted civil aircraft into guided bombs for strikes against the United States," Congress identified a need for "a fundamental change in the way [the United States] approaches the task of ensuring the safety and security of the civil air transportation system." H.R. Rep. No. 107-296, at 53 (2001) (Conf. Rep.), reprinted in 2002 U.S.C.C.A.N. 589, 590. Accordingly, on November 19, 2001, it enacted the Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71, 115 Stat. 597 (2001) (codified principally in scattered sections of 49 U.S.C.). The ATSA "broadly expand[ed] the government's control over, and active role in, aviation security" through the creation of the TSA. Kent C. Krause, "Putting the Transportation Security Administration in Historical Context," 68 J. Air L. & Com. 233, 244 (2003).

The TSA is headed by an Administrator,[1] whom Congress has made "responsible for security in all modes of transportation, including," most notably, "civil aviation security." 49 U.S.C. § 114(d).  The Administrator is required, <u>inter alia</u>, to "provide for the screening of all passengers and property . . . that will be carried aboard a passenger aircraft operated by an air carrier or foreign air carrier in air transportation or intrastate air transportation." <u>Id.</u> § 44901(a).[2]  To ensure that this mandate was carried out promptly, the ATSA required the Administrator, "[n]ot later than 1 year after" the passage of the Act, to "deploy at all airports in the United States where screening is required . . . a sufficient number of Federal screeners, Federal Security Managers, Federal security personnel, and Federal law enforcement officers to conduct the screening of all passengers and property" as required by statute.  <u>Id.</u> § 44901 note.  The instant action concerns an application for a security screener position filed by plaintiff Conyers during this critical one-year period.

---

[1] Following the passage of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, the title of the head of the TSA was changed from "Under Secretary," as the post is referred to in the ATSA, <u>see</u> 49 U.S.C. § 114(b)(1), to "Administrator."  <u>See</u> <u>American Fed'n of Gov't Employees, AFL-CIO v. Loy</u>, 281 F. Supp. 2d 59, 61 n.1 (D.D.C. 2003) (noting this change), <u>aff'd</u> 367 F.3d 932 (D.C. Cir. 2004); <u>see also</u> 49 C.F.R. § 1500.3 ("Administrator means the Under Secretary of Transportation for Security identified in 49 U.S.C. 114(b) who serves as the Administrator of the Transportation Security Administration.").  In accordance with TSA regulations, in this opinion, we will use the term "Administrator," rather than "Under Secretary" or "Assistant Secretary."

[2] Many of the Administrator's other duties are catalogued in <u>Springs v. Stone</u>, 362 F. Supp. 2d 686, 690, 695 (E.D. Va. 2005).

4

The ATSA contains two sets of provisions that address the means by which TSA applicants and employees are to be assessed, hired, evaluated, and terminated. First, Section 101 of the Act provides, in relevant part, that

> [t]he personnel management system established by the Administrator of the Federal Aviation Administration under [49 U.S.C.] section 40122 shall apply to employees of the Transportation Security Administration, or, subject to the requirements of such section, the [Administrator] may make such modifications to the personnel management system with respect to such employees as the [Administrator] considers appropriate, such as adopting aspects of other personnel systems of the Department of Transportation.

Id. § 114(n). Section 40122 of Title 49, in turn, provides that "[t]he provisions of title 5" – that portion of the United States Code dealing with "Government Organization and Employees" – "shall not apply" to the FAA's personnel management system, with certain explicitly listed exceptions, including provisions concerning whistleblower protection, veterans' preference in hiring, labor-management relations, and appeals to the Merit Systems Protection Board. Id. § 40122(g)(2).

Second, the ATSA contains several provisions applicable only to "security screeners." For example, the Act mandates that security screeners possess "a high school diploma" or other equivalent experience; "basic aptitudes and physical abilities, including color perception, visual and aural acuity, physical coordination, and motor skills"; and the ability "to read, speak, and write English well enough to" perform various screening-related tasks. Id. § 44935(f)(1). The Act also requires the Administrator to "provide a preference for the

5

hiring of an individual as a security screener if the individual is a member or former member of the armed forces." Id. § 44935(f)(2).  Finally, and most broadly, Section 111(d) of the ATSA provides:

> Screener Personnel. . . . Notwithstanding any other provision of law, the [Administrator] may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the [Administrator] determines to be necessary to carry out the screening functions [required by the Act].  The [Administrator] shall establish levels of compensation and other benefits for individuals so employed.

Id. § 44935 note (internal quotation marks omitted).

The legislative history indicates that "Section 111(d) evolved out of an earlier Senate provision intended to provide the [Administrator] with authority to hire (i) any necessary number of screeners, without regard to any limitation on the number imposed by any law or Executive Order, (ii) but with the employee protections of part III of title 5 applicable to all screeners hired." American Fed'n of Gov't Employees TSA Local 1 v. Hawley, 481 F. Supp. 2d 72, 77 (D.D.C. 2006) (discussing original Senate proposal[3]).  An amendment introduced

_____

[3] The original proposed language read as follows:

> Authorization of Employment – The Secretary of Transportation is authorized to employ, appoint, and fix the compensation of such a number of individuals as may be necessary to carry out sections 44901 and 44903 of title 49, United States Code, in accordance with the provisions of part III of title 5, United States Code, without regard to any limitation on number of employees imposed by any other law or Executive Order.

S. 1447, 107th Cong. § 10 (2001).

6

by Senator McCain on October 11, 2001, however, replaced the original proposal with language substantially identical to the current language of Section 111(d). Id.[4] The stated purpose of this amendment was "'[t]o authorize the employment, suspension, and termination of airport passenger security screeners without regard to the provisions of title 5, United States Code, otherwise applicable to such employees.'" 147 Cong. Rec. S10,520 (daily ed. Oct. 11, 2001).

Following adoption of this revised language in the final version of the ATSA, several Members of Congress expressed their understanding that Section 111(d) left many matters concerning the employment of security screeners "to the discretion of the" TSA, including "health care, worker's compensation, and civil rights and whistleblower protection." 147 Cong. Rec. S11,982 (daily ed. Nov. 16, 2001) (statement of Sen. Rockefeller); see also 147 Cong. Rec. H8313 (daily ed. Nov. 16, 2001) (statement of Rep. Schakowsky) ("It is my understanding that the Secretary is given the authority to determine whether [screeners] can

---

[4] Senator McCain's amendment also proposed the addition of a new subsection (e), which provided as follows: "Strikes prohibited. – An individual employed as a security screener . . . is prohibited from participating in a strike or asserting the right to strike pursuant to section 7311(3) or 7116(b)(7) of title 5, United States Code." 147 Cong. Rec. S10,520 (daily ed. Oct. 11, 2001). This provision was ultimately included in Section 111, which provides that "[a]n individual that screens passengers or property, or both, at an airport under this section may not participate in a strike, or assert the right to strike, against the person (including a governmental entity) employing such individual to perform such screening." 49 U.S.C. § 44935(i).

join a union; participate in the Federal Employees Health Benefit Plan and retirement options; and be covered by non-discrimination, health and safety, and whistleblower laws.").[5]

B.     Conyers's Application for Employment with the TSA and Prior Litigation

On this appeal, we assume the truth of the facts alleged by the plaintiff in his complaint. See Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008).

In mid-2002, along with more than two million other persons, Conyers applied for various airport security screener positions with the newly created TSA. See Springs v. Stone, 362 F. Supp. 2d 686, 690 (E.D. Va. 2005) (describing that, "between March and November 2002," the TSA's human resources provider "processed 2,198,505 on-line applications and assessed some 340,000 eligible candidates for screening positions"). On July 19, 2002, Conyers underwent an employment assessment and was determined to be "'Disqualified/Unqualified'" for the position of Supervisory Transportation Security Screener at Long Island's MacArthur Airport in Ronkonkoma, New York. Complaint ¶ 20. The letter informing Conyers of this assessment, which is attached as an exhibit to the complaint, states that "the TSA is not able to provide any detailed information regarding your results on the tests or interview. This is a pass/fail assessment system; therefore you will

---

[5] The shorthand version of Section 111(d) provided in the Conference Report reads: "Notwithstanding any law, the Attorney General may hire, fire, and pay screeners as he determines necessary." H.R. Rep. No. 107-296, at 69, reprinted in 2002 U.S.C.C.A.N. at 606. (In the Senate version of the Act, the Attorney General was made "[r]esponsible for screening, including the hiring and training of screeners." Id. at 57, reprinted in 2002 U.S.C.C.A.N. at 594.)

receive no further information by calling the agency, its employees, or its contractors." Id. Ex. 1.

Thereafter, Conyers made "numerous attempts" to "obtain specific information" about or an "administrative review" of his assessment, but was unsuccessful until 2003, when his congressional representative was informed that Conyers "did not pass the physical qualifications examination."[6] Id. ¶ 22 & Ex. 2. Conyers further alleges that the TSA determined that his "negative assessment rating was applicable for all employment positions" for which he had applied. Id. ¶ 23.

On October 21, 2002, Conyers filed an appeal with the Merit Systems Protection Board ("MSPB") challenging the TSA's decision not to select him for the Supervisory Transportation Security Screener position (the "MSPB Action"). An Administrative Judge dismissed Conyers's appeal for lack of subject matter jurisdiction, and the MSPB denied his petition for review. Conyers first appealed to the United States Court of Appeals for the Federal Circuit, which affirmed, and he then unsuccessfully sought review by the Supreme

---

[6] The explanation is perplexing because, at least at the time of oral argument, Conyers had the physical capacity to serve as a member of the National Guard on active duty in Iraq. In response to a court inquiry, government counsel acknowledged that the TSA's determination that Conyers was not physically qualified to perform as a security screener may have been simply a clerical mistake attributable to the high volume of applications processed by the TSA in 2002. While we do not pursue the question further because its resolution is not relevant to our analysis of Conyers's claims, the Assistant United States Attorney handling this appeal has agreed to speak with the TSA to ensure careful review of any further employment application submitted by Conyers, given his professed continued interest in working for the TSA upon discharge from active military service.

9

Court.  See Conyers v. Merit Sys. Prot. Bd., 388 F.3d 1380 (Fed. Cir. 2004), cert. denied 543 U.S. 1171, reh'g denied 544 U.S. 969 (2005).  The Federal Circuit held that Section 111(d) of the ATSA "renders inapplicable general federal statutes that otherwise would apply" to the process of selecting TSA screeners, including the provisions of Title 5 of the United States Code that would permit an appeal to the MSPB in Conyers's case.  Id. at 1382 (construing 49 U.S.C. § 44935 note).

C.    The Instant Case

Two weeks after the Supreme Court denied Conyers's petition for rehearing in the MSPB Action, he filed the instant case against the TSA Administrator in the Eastern District of New York.[7]  Conyers principally seeks a judgment under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., declaring that the Administrator misconstrued the ATSA insofar as he (1) did not utilize the FAA's personnel management system in hiring security screeners, as Conyers contends is required by ATSA Section 101, 49 U.S.C. § 114(n); and, more specifically, (2) failed to give veterans a hiring preference in the manner required by the FAA's system, see 49 U.S.C. § 40122(g)(2)(B).  Conyers also seeks an order, pursuant to the Veterans Employment Opportunities Act ("VEOA") of 1998, 5 U.S.C. § 3330a et seq., directing the Administrator to comply with the veterans' preference provisions

_____

[7] Conyers's complaint initially named David M. Stone, the then-Acting Administrator of the TSA.  In the proceedings below, Kip Hawley was substituted as defendant under Fed. R. Civ. P. 25(d).  Current Acting Administrator Gale D. Rossides has now been automatically substituted as defendant pursuant to Federal Rule of Appellate Procedure 43(c)(2).

incorporated in the FAA's personnel management system and granting him relief pursuant to 5 U.S.C. § 3330c.  Finally, Conyers seeks a declaration that the process used to evaluate his application violated his due process and equal protection rights under the Fifth and Fourteenth Amendments.  Conyers does not otherwise seek monetary or injunctive relief.

The Administrator filed an answer on August 19, 2005, and, on January 17, 2006, moved to dismiss Conyers's complaint for lack of subject matter jurisdiction or, in the alternative, for judgment on the pleadings.  See Fed. R. Civ. P. 12(b)(1), (c).  On July 26, 2007, the district court granted dismissal, holding that (1) it lacked jurisdiction over Conyers's APA claims because the hiring of security screeners was committed to the TSA's discretion under Section 111(d) of the ATSA, (2) it lacked jurisdiction over Conyers's VEOA claims because the veterans' preference provisions he sought to enforce were rendered inapplicable by Section 111(d), and (3) Conyers's constitutional claims were barred by the doctrine of sovereign immunity.  See Conyers v. Hawley, No. 05 Civ. 2079, 2007 WL 2219483 (E.D.N.Y. July 26, 2007).  Conyers filed a timely notice of appeal.

II.     **Discussion**

A.     APA Claims

"On appeal from a judgment entered pursuant to Federal Rule of Civil Procedure 12(b)(1)" for lack of jurisdiction, "we review conclusions of law de novo."  Sharkey v. Quarantillo, 541 F.3d at 82 (internal quotation marks omitted).  "'The party invoking federal

11

jurisdiction bears the burden of establishing' that jurisdiction exists." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). "'[W]here, as here, the case is at the pleading stage and no evidentiary hearings have been held," however, "'[i]n reviewing the grant of a motion to dismiss [under Rule 12(b)(1)] we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" Id. at 83 (quoting Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001)). Nevertheless, even "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

"In determining whether a suit can be brought under the APA, '[w]e begin with the strong presumption that Congress intends judicial review of administrative action.'" Id. at 84 (quoting Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670 (1986)). "However, review under the APA may be excepted where: (i) 'statutes preclude judicial review;' or (ii) 'agency action is committed to agency discretion by law.'" Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (quoting 5 U.S.C. § 701(a)).[8] "These exceptions are construed narrowly and apply only if there is 'clear and convincing evidence

---

[8] We have recently noted that "[i]t is uncertain in light of recent Supreme Court precedent whether these threshold limitations are truly jurisdictional or are rather essential elements of the APA claims for relief." Sharkey v. Quarantillo, 541 F.3d at 87. To the extent that the Administrator has sought, in the alternative, judgment on the pleadings pursuant to Rule 12(c), we need not address this question here, as the result in this case would be the same under either rubric. Cf. id. at 88 n.11 ("To the extent the issues concern essential elements of the plaintiff's claims for relief, we exercise our discretion to raise them sua sponte in order to determine whether there are alternative grounds in the record for granting the defendant's unadjudicated 12(b)(6) motion.").

12

of legislative intention to preclude review.'" Id. (quoting Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 n.4 (1986)).  Making this determination requires an examination of both the "'express language'" of the statute, as well as "'the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.'"  Id. (quoting Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984)).[9] Here, the district court held that it did not have jurisdiction over Conyers's APA claims because the Administrator's determination as to whether the personnel management provisions of 49 U.S.C. § 114(n) and § 40122(g) – including the veterans' preference provisions of § 40122(g)(2)(B) – should be applied to screener applicants is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), specifically, by Section 111(d) of the ATSA, 49 U.S.C. § 44935 note.

At the outset, we note that this particular restriction on the availability of APA review "applies only in 'those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" Sharkey v. Quarantillo, 541 F.3d at 91 (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971)); see also Schneider v. Feinberg, 345 F.3d 135, 148 (2d Cir. 2003) (stating that exception applies where "the governing statute or regulations '[are] drawn so that a court would have no meaningful

---

[9] As we have noted, "[a]lthough the APA does not itself confer subject matter jurisdiction, the Federal Question Statute, 28 U.S.C. § 1331, confers jurisdiction over a suit that 'arises under' a 'right of action' created by the APA.  Because Section 1331 confers jurisdiction on the district courts, a suit that arises under the APA is properly brought in district court." Sharkey v. Quarantillo, 541 F.3d at 84 (citations omitted).

13

standard against which to judge the agency's exercise of discretion'" (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1985))). Webster v. Doe, 486 U.S. 592 (1988), provides an example of such an instance. There, the Supreme Court held that a CIA employee could not seek APA review of his termination because Section 102(c) of the National Security Act permitted "termination of an Agency employee whenever the Director 'shall deem such termination necessary or advisable in the interests of the United States.'" Id. at 600 (emphasis in Webster). The Court observed that "[t]his standard fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review." Id. The Court also noted that "the overall structure" of the National Security Act confirmed this result, insofar as (1) the Act was "[p]assed shortly after the close of the Second World War," and gave the Director of the CIA "the responsibility 'for protecting intelligence sources and methods from unauthorized disclosure,'" id. at 600-01 (quoting 50 U.S.C. § 403(d)(3) (1982)); and (2) "Section 102(c) is an integral part of that statute, because the Agency's efficacy, and the Nation's security, depend in large measure on the reliability and trustworthiness of the Agency's employees," id. at 601.

With this analysis in mind, we now conclude – as has every court that has addressed similar claims – that the question of whether to utilize the FAA's personnel management system in employing or appointing security screeners is a matter committed to the Administrator's discretion under ATSA Section 111(d), 49 U.S.C. § 44935 note. See

14

American Fed'n of Gov't Employees TSA Local 1 v. Hawley, 481 F. Supp. 2d at 90-91 [D.D.C.] (holding that, in light of Section 111(d), court had no jurisdiction under APA to address claim that 49 U.S.C. § 40122(g)(2) should have governed procedure for terminating TSA screeners); Springs v. Stone, 362 F. Supp. 2d at 701-04 [E.D. Va.] (same); see also Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1337 (11th Cir. 2006) (holding that, in light of Section 111(d), TSA was exempt from requirements of Rehabilitation Act); Conyers v. Merit Sys. Prot. Bd., 388 F.3d at 1381-83 [Fed. Cir.] (holding that, under Section 111(d), MSPB does not have jurisdiction to review claim of unsuccessful applicant for screener position); Ray v. U.S. Dep't of Homeland Sec., No. H-07-2967, 2008 WL 3263550, at *8-10 (S.D. Tex. Aug. 7, 2008) (granting motion to dismiss non-constitutional federal claims regarding suspension and discharge of TSA screener); Daniels v. Chertoff, No. CV 06-2891, 2007 WL 1140401, at *4-5 (D. Ariz. Apr. 17, 2007) (holding that, in light of Section 111(d), TSA was exempt from requirements of Rehabilitation Act); Pino v. Hawley, 480 F. Supp. 2d 818, 824-25 (W.D. Pa. 2007) (same); Yeager v. Chertoff, No. C06-0740, 2006 WL 4673439, at *4-5 (W.D. Wash. Nov. 13, 2006) (same); Tucker v. Ridge, 322 F. Supp. 2d 738, 742-43 (E.D. Tex. 2004) (same); Orelski v. Pearson, 337 F. Supp. 2d 695, 703 (W.D. Pa. 2004) (holding that state law claims of terminated screener were preempted by Section 111(d)); Calvin v. United States, 63 Fed. Cl. 468, 473 (2005) (finding that "Section 111[(d)] of the ATSA . . . governs the employment of screener personnel" in holding that screeners

are "appointees" rather than contract employees); <u>United States Dep't of Homeland Sec. &</u> <u>Am. Fed'n of Gov't Employees AFL-CIO</u>, 59 F.L.R.A. 423, 2003 WL 22669101, at *7 (2003) (dismissing petition of labor union seeking to represent screeners in light of Administrator's "unfettered discretion [under Section 111(d)] to preclude TSA screeners from being represented by an organization for the purposes of engaging in collective bargaining"); cf. <u>American Fed'n of Gov't Employees Local 1 v. Stone</u>, 502 F.3d 1027, 1035 (9th Cir. 2007) (holding that district court had jurisdiction to hear terminated screener's constitutional claims, but noting that "the language Congress used when it enacted ATSA is quite similar to the statutory language at issue in <u>Webster</u>"); <u>Getzlow v. Chertoff</u>, EEOC Doc. 0120053286, 2007 WL 1964480, at *3-4 (June 26, 2007) (holding that, while EEOC retained jurisdiction to hear Rehabilitation Act claim of unsuccessful screener applicant, under Section 111(d), "the requirements of the Rehabilitation Act cannot negate or override the ATSA-mandated qualification standards"); <u>Colton v. Huntleigh USA Corp.</u>, 121 P.3d 1070, 1072, 1074-76 (Okla. 2005) (holding that former screeners' state-law claims against TSA subcontractor for unpaid bonuses accrued prior to full federalization of screener workforce not preempted by ATSA).

Focusing on the language of Section 111(d), we note first, as do many of the above-cited cases, that the phrase "[n]otwithstanding any other provision of law" is one that "clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section," <u>Cisneros v. Alpine Ridge Group</u>, 508 U.S. 10, 18 (1993); <u>see</u> <u>Conyers v. Merit Sys. Prot. Bd.</u>, 388 F.3d at 1382 (quoting <u>Cisneros</u>); <u>Springs</u>

v. Stone, 362 F. Supp. 2d at 697 (same), including sections of the statute in which the notwithstanding clause appears, see generally Liberty Maritime Corp. v. United States, 928 F.2d 413, 417 n.4 (D.C. Cir. 1991) ("[T]he language 'notwithstanding any other provision of this chapter or any other Act' means the same thing as 'notwithstanding any other provision of law.'" (emphasis omitted)).[10] As the Supreme Court has observed, "[a] clearer statement is difficult to imagine." Cisneros v. Alpine Ridge Group, 508 U.S. at 18 (internal quotation marks omitted, alteration in Cisneros).

Second, Section 111(d) speaks broadly of the Administrator's authority to "employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service" for security screeners. 49 U.S.C. § 44935 note. This nearly comprehensive list of employment-related decisions, along with Section 111(d)'s final sentence regarding the Administrator's establishment of "levels of compensation and other benefits," id., brings within the reach of the Section precisely the kinds of decisions on which Conyers focuses here, including whether to make use of the FAA's personnel management system in hiring security screeners. Indeed, it is these kinds of decisions that a personnel management system is designed to regulate. Cf. id. § 40122(g)(1) (providing that the FAA's personnel management system "shall, at a minimum, provide for greater flexibility in the

---

[10] We also note that, to the extent we hold here that Section 111(d) permits the Administrator to exempt security screeners from the provisions of Section 101, our holding does not "nullify" the latter provision, as Conyers contends. Appellant's Br. at 25-26. Rather, it simply "exempts the [Administrator] from applying certain provisions to employment actions affecting airport security screeners in particular." Springs v. Stone, 362 F. Supp. 2d at 698. Such an exception is consistent with the ATSA's general scheme, which distinguishes between TSA employees generally and security screeners at several points. See id. at 698-99; supra at **[5-8]**.

hiring, training, compensation, and location of personnel" (emphasis added)).  In short, we agree with the Administrator, and the courts cited above, that the "plain text of Section 111(d) clearly signals Congress's intention to grant the [Administrator] authority to design a personnel management system for airport security screeners, to include or not include at the [Administrator's] discretion provisions of other federal personnel laws, including those in the FAA's personnel management system in 49 U.S.C. § 40122(g)."  American Fed'n of Gov't Employees TSA Local 1 v. Hawley, 481 F. Supp. 2d at 85; see also American Fed'n of Gov't Employees Local 1 v. Stone, 502 F.3d at 1030 (describing Section 111(d) as "a catchall provision giving the TSA Administrator significant discretion over the employment of security screeners").

Conyers's central textual argument is that these broad clauses are "qualified by the immediate following 'such a number of individuals' clause," which he contends indicates that Section 111(d) is concerned only with "the size and availability" of the screener workforce.  Appellant's Br. at 27, 29-30.  He asks that we read Section 111(d) as simply describing the authority of the Administrator to "employ . . . such a number of individuals," to "appoint . . . such a number of individuals," "to discipline . . . such a number of individuals," and so on, but not as independently granting the Administrator discretion regarding whom to "employ," "appoint," or "discipline."  Id. at 27-29.  We reject this reading and conclude – as have the courts cited above – that the language of Section 111(d) plainly gives the Administrator discretion both (1) to "employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service" for

18

screeners, and (2) to do so "for such a number of individuals as the [Administrator] determines to be necessary to carry out the screening functions [required by the Act]." 49 U.S.C. § 44935 note.

Perhaps most fatal to Conyers's argument, his reading of the statute would render superfluous the provision of the ATSA requiring the Administrator to "provide a preference for the hiring of an individual as a security screener if the individual is a member or former member of the armed forces." Id. § 44935(f)(2). If, as Conyers contends, ATSA Section 101, 49 U.S.C. § 114(n), already requires the Administrator to use the FAA's personnel management system in hiring screeners, including the veterans' preference provisions incorporated in that system, see id. § 40122(g)(2)(B), then § 44935(f)(2) is simply redundant.[11] Established principles of construction preclude such a reading of this statute. See, e.g., TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)).[12]

---

[11]  Of course, nothing in the ATSA bars the Administrator, in complying with the mandate of 49 U.S.C. § 44935(f)(2), from choosing to provide security screeners with the veterans' preferences that are afforded under the FAA's system.  We note only that the inclusion of 49 U.S.C. § 44935(f)(2) in the ATSA provides support for the conclusion that the Administrator is not independently required to do so by 49 U.S.C. § 114(n).

[12]  Indeed, although Conyers repeatedly emphasizes that his "harmonious" interpretation must be correct because it gives effect to every provision of the ATSA, Appellant's Reply Br. at 11, and while his papers review the structure and provisions of the Act in admirable detail, he does not describe how the requirements of § 44935(f)(2) can be given independent meaning if we endorse his narrow reading of Section 111(d).  This omission is significant insofar as Conyers's claims are focused primarily on veterans'

19

We further note that the interpretation we adopt today comports with the legislative history discussed above. See supra Section I.A.[13] Although it appears that the initial version of what would become Section 111(d) was primarily concerned with the Administrator's authority to maintain a sufficient number of screeners, see American Fed'n of Gov't Employees TSA Local 1 v. Hawley, 481 F. Supp. 2d at 77, Senator McCain's amendment significantly broadened the reach of the provision "[t]o authorize the employment, suspension, and termination of airport passenger security screeners without regard to the provisions of title 5, United States Code, otherwise applicable to such employees," 147 Cong. Rec. S10,520 (daily ed. Oct. 11, 2001). Thus, when the law passed in substantially the form proposed by Senator McCain, it was understood that matters that otherwise would have been governed by 49 U.S.C. §§ 114(n), 40122(g), and the provisions of Title 5 incorporated therein – such as "whether [screeners] can join a union; participate in the Federal Employees Health Benefit Plan and retirement options; and be covered by non-discrimination, health and safety, and whistleblower laws" – were left to the Administrator's discretion. 147 Cong. Rec. H8313 (daily ed. Nov. 16, 2001) (statement of Rep. Schakowsky). Viewed in this context, it becomes clear that adopting Conyers's reading of Section 111(d) – that it is concerned with nothing more than the size and availability of the screener workforce – would

_____

preference issues. It is also notable that § 44935(f)(2) is not among the many provisions regarding veterans' preference that he claims that the Administrator violated in his case.

[13] Although the plain text of this statute is unambiguous and therefore we need not discuss the legislative history, see United States v. Magassouba, 544 F.3d 387, 404 (2d Cir. 2008), we exercise our discretion to discuss some aspects of the legislative history in order to respond to particular arguments put forth by Conyers.

require us to rewrite this history and return the ATSA to its pre-amendment form, which preserved the Title 5 rights Conyers seeks to enforce here. This we cannot do.

Finally, the similarity between Webster and the instant case confirms this result. The ATSA, like the National Security Act addressed in Webster, was passed shortly after a cataclysmic event that Congress believed required it to take action to change the way in which the nation protected itself. Compare Webster v. Doe, 486 U.S. at 600 (noting that the NSA was "[p]assed shortly after the close of the Second World War"), with H.R. Rep. No. 107-296, at 53 (finding that the events of September 11, 2001, required "a fundamental change in the way [the United States] approaches the task of ensuring the safety and security of the civil air transportation system"), reprinted in 2002 U.S.C.C.A.N. 589, 590. In both instances, Congress created a new agency to confront these challenges – the CIA in Webster, the TSA here – and gave its administrator a high level of responsibility. Compare Webster v. Doe, 486 U.S. at 600 (noting that Director of the CIA has "the responsibility 'for protecting intelligence sources and methods from unauthorized disclosure'" (quoting 50 U.S.C. § 403(d)(3) (1982)), with 49 U.S.C. § 114(d) (making the Administrator of TSA "responsible for security in all modes of transportation"). In addition, recognizing that the new agency's "efficacy, and the Nation's security, depend in large measure on the reliability and trustworthiness of the Agency's employees," Webster v. Doe, 486 U.S. at 601, Congress also gave its administrator broad authority to control the agency's workforce. Compare 50 U.S.C. § 403(c) (1982) ("Notwithstanding the provisions of section 7501 of title 5, or the provisions of any other law, the Director of Central Intelligence may, in his discretion,

21

terminate the employment of any officer or employee of the [Central Intelligence] Agency whenever the he shall deem such termination necessary or advisable in the interests of the United States."), with 49 U.S.C. § 44935 note ("Notwithstanding any other provision of law, the [Administrator] may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the [Administrator] determines to be necessary to carry out the screening functions [required by the ATSA]."). As in Webster, each of these aspects of "'the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved,'" counsels against a finding that APA review of Conyers's APA claim is permitted. Natural Res. Def. Council v. Johnson, 461 F.3d at 171 (quoting Block v. Cmty. Nutrition Inst., 467 U.S. at 345).

We need not decide whether APA review is unavailable with respect to all of the Administrator's decisions regarding screener employment. We conclude here only that the specific "agency action" complained of by Conyers, namely, the Administrator's decision not to utilize the FAA's personnel management system in deciding whom to "employ" or "appoint" as a security screener, "is committed to agency discretion by" ATSA Section 111(d) and, thus, is not reviewable under the APA, 5 U.S.C. § 701(a).

B.    VEOA Claims

Conyers also sues to secure an order directing the Administrator to comply with the veterans' preference provisions incorporated in the FAA's personnel management system,

49 U.S.C. § 40122(g)(2)(B), as well as the regulations promulgated pursuant to those provisions. The asserted jurisdictional basis for this claim is the VEOA, 5 U.S.C. § 3330b. As the Federal Circuit has noted, "the purpose of the VEOA is to provide preference eligible veterans with a method for seeking redress where their veterans' preference rights have been violated in hiring decisions made by the federal government." Kirkendall v. Dep't of Army, 479 F.3d 830, 837 (Fed. Cir. 2007). "Where a veteran establishes a violation, the agency is ordered to comply with the veterans' preference statutes and award compensation for any lost wages or benefits suffered by reason of the violation." Id. (citing 5 U.S.C. § 3330c(a)).

To this end, 5 U.S.C. § 3330a provides, inter alia, that a "preference eligible" person "who alleges that an agency has violated such individual's rights under any statute or regulation relating to veterans' preference may file a complaint with the Secretary of Labor." Subsection 3330a(d), in turn, provides that "[i]f the Secretary of Labor is unable to resolve a complaint under subsection (a) within 60 days after the date on which it is filed, the complainant may elect to appeal the alleged violation to the Merit Systems Protection Board." After taking such an appeal, § 3330b – the provision here relied upon by Conyers – allows a preference eligible person, "[i]n lieu of continuing the administrative redress procedure provided under section 3330a(d) . . . [to] elect, in accordance with this section, to terminate those administrative proceedings and file an action with the appropriate United States district court not later than 60 days after the date of the election." Such an election "may not be made," however, either "(1) before the 121st day after the date on which the appeal is filed with the Merit Systems Protection Board under section 3330a(d); or (2) after

23

the Merit Systems Protection Board has issued a judicially reviewable decision on the merits of the appeal." 5 U.S.C. § 3330b(b). In addition, such an election must "be made, in writing, in such form and manner as the Merit Systems Protection Board shall by regulation prescribe." 5 U.S.C. § 3330b(c).[14]

We note at the outset that Conyers does not appear to have satisfied the prerequisites for bringing a claim under § 3330b. Even if we were to agree with Conyers and the district court that the dismissal of the MSPB Action for lack of jurisdiction was not a "judicially reviewable decision on the merits of the appeal" under 5 U.S.C. § 3330b(b)(2), Conyers does not allege that he filed a document with the MSPB "elect[ing], in accordance with" the requirements of § 3330b and the relevant MSPB regulations, to pursue relief in federal court "[i]n lieu of continuing the administrative redress procedure provided under section 3330a(d)."[15]

---

[14] This regulation is found at 5 C.F.R. § 1208.24:

> (a) Election to terminate. At any time beginning on the 121st day after an appellant files a VEOA appeal with the Board, if a judicially reviewable Board decision on the appeal has not been issued, the appellant may elect to terminate the Board proceeding as provided under 5 U.S.C. 3330b and file a civil action with an appropriate United States district court. Such election must be in writing, signed, filed with the Board office where the appeal is being processed, and served on the parties. The election is effective immediately on the date of receipt by the Board office where the appeal is being processed. The election may be filed by electronic filing, provided the requirements of § 1201.14 of this chapter are satisfied.

[15] The complaint alleges only that, "[a]s per 5 U.S.C. § 3330b(b)(2), a judicially reviewable decision on the merits of Plaintiff's allegations of veteran preference violations has not been rendered as the United States Merit Systems Protection Board (MSPB) has ruled that it lacked jurisdiction over the VEOA claims." Complaint ¶ 3. Conyers does not address,

In any event, we agree with the district court that Conyers's purported VEOA claims fail for much the same reason his APA claims fail: the veterans' preference provisions he contends were violated are simply not binding on the Administrator in light of Section 111(d) of the ATSA. See also American Fed'n of Gov't Employees TSA Local 1 v. Hawley, 481 F. Supp. 2d at 89-90 (dismissing a similar claim); Springs v. Stone, 362 F. Supp. 2d at 697-700 (same). The district court therefore did not err in dismissing Conyers's request for relief under the VEOA.[16]

C.       Constitutional Claims

Finally, Conyers seeks a declaration that the Administrator "willfully violated [his] rights by failing to" (1) "abide by applicable veteran preference requirements and

however, the statute's requirement that a written election be filed with the MSPB.

[16] The district court held that because Conyers could not demonstrate that his veterans' preference rights were violated, it lacked jurisdiction under the VEOA, because (1) actions under § 3330b can only arise where an earlier appeal was filed with the MSPB under § 3330a; (2) § 3330a, in turn, only applies to allegations by a preference eligible person that "an agency has violated such individual's rights under any statute or regulation relating to veterans' preference"; and (3) Conyers cannot identify any "statute or regulation relating to veterans' preference" that applies to him, because ATSA Section 111(d) renders all such statutes and regulations inapplicable to his case. We generally agree with this line of reasoning, but we conclude therefrom that the Administrator is entitled to judgment on the pleadings as to Conyers's VEOA claims, not that the district court lacked jurisdiction over such claims, because Conyers's allegations of veterans' preference violations are not "frivolous." Cf. Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 701 (2d Cir. 2000) ("Federal question jurisdiction exists whenever the complaint states a cause of action under federal law that is neither 'clearly . . . immaterial and made solely for the purpose of obtaining jurisdiction' nor 'wholly insubstantial and frivolous.' It is well settled that plaintiff's failure to state a federal claim upon which relief could be granted does not mean that federal question jurisdiction is lacking." (quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946)) (internal citation omitted)).

25

procedures," in violation of the Due Process Clause of the Fifth Amendment, and (2) "ensure fair and equitable consideration for employment under uniform personnel practices, policies, and procedures," in violation of the equal protection guarantees of the Fifth and Fourteenth Amendments. Complaint at 24-25.

The district court held that these claims are barred by the doctrine of sovereign immunity. On appeal, the Administrator does not rely on sovereign immunity to support dismissal, recognizing that, in Dotson v. Griesa, 398 F.3d 156 (2d Cir. 2005), we ruled that claims for prospective equitable relief, such as the declaratory judgment sought by Conyers here, are not so barred. Id. at 178-79 (citing, inter alia, Edelman v. Jordan, 415 U.S. 651 (1974)); cf. Alden v. Maine, 527 U.S. 706, 757 (1999) (noting that sovereign immunity "does not bar certain actions against state officers for injunctive or declaratory relief"); Appellee's Br. at 22.

In Dotson, however, we went on to hold that, with respect to federal employees covered by the Civil Service Reform Act ("CSRA"), "Congress has clearly expressed its intent to preclude federal civil service personnel . . . from attempting to supplement statutory remedies . . . with separate suits at equity raising constitutional challenges to adverse employment actions." 398 F.3d at 183. We decline the Administrator's request to decide here that ATSA Section 111(d), which would appear to exempt screeners from CSRA coverage, similarly divests the federal courts of jurisdiction over Conyers's constitutional claims. See American Fed'n of Gov't Employees Local 1 v. Stone, 502 F.3d at 1029-30, 1035-39 (holding that TSA screener's constitutional claim sounding in equity was not barred

26

by the CSRA and Section 111(d)); see generally Whitman v. Dep't of Transp., 547 U.S. 512, 513-14 (2006) (noting that "question, then, is not whether 5 U.S.C. § 7121 [outlining CSRA grievance procedures] confers jurisdiction, but whether § 7121 (or the CSRA as a whole) removes the jurisdiction given to the federal courts" over plaintiff's constitutional claims otherwise provided by 28 U.S.C. § 1331).  Rather, mindful that the question is one of statutory rather than constitutional jurisdiction, we assume hypothetical jurisdiction over these claims, and we proceed to address the alternative argument for dismissal offered below, namely, that judgment on the pleadings is appropriate as to Conyers's constitutional claims. See Fed. R. Civ. P. 12(c); see also Ajlani v. Chertoff, 545 F.3d 229, 237-38 (2d Cir. 2008) (discussing hypothetical jurisdiction).

We agree with the Administrator that Conyers's constitutional claims fail as a matter of law.  First, Conyers's due process claim appears to be premised upon an assertion that he possesses a "property right" to the preferences afforded veterans under Section 101 of the ATSA and 49 U.S.C. § 40122(g)(2)(B), of which he cannot be deprived without adequate procedures.  Complaint ¶¶ 50-52.[17]  We have held here, however, that the Administrator is not obliged to provide veterans applying for security screener positions the preferences afforded under those provisions, as would be necessary to give rise to a colorable property interest.  See supra Section II.A; see generally Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005) (noting that claimed benefit does not give rise to a constitutionally protected

_____

[17] Even when read liberally, Conyers's complaint raises only a procedural, not substantive, due process claim.  Cf. Gikas v. Washington Sch. Dist., 328 F.3d 731, 736-37 (3d Cir. 2003) (holding that Pennsylvania's veterans' preference statute does not create a property interest protected by substantive due process).

interest "if government officials may grant or deny it in their discretion"); Board of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). Conyers thus fails to state a claim for deprivation of property without due process.

Second, Conyers's equal protection claim is premised upon an allegation that the TSA did not utilize "uniform personnel practices while evaluating, assessing, rating, selecting, and appointing the initial fielding of the screener workforce," including in its evaluation of Conyers's own application. Complaint ¶¶ 47-49. In support, Conyers has attached as an exhibit to the complaint a December 11, 2002 report from the Office of the Inspector General in the Department of Transportation, which found that, although the TSA had "done a good job of hiring a high proportion of veterans," it had not yet adopted a "formal policy" regarding veterans' preferences. Memorandum from Alexis M. Stefani, Principal Assistant Inspector Gen. for Auditing & Evaluation, Dep't of Transp., to Admiral James M. Loy, Under Sec'y of Transp. for Sec. at 1, 4 (Dec. 11, 2002). The report explained that the TSA had instead relied on "a series of e-mails, verbal instructions, and informal documents" to implement the preference policy, leading to "misunderstandings" at some TSA job fairs. Id. at 4.[18]

Conyers does not allege, however, that he, or anyone else, was discriminated against on the basis of race, sex, national origin, or other protected classification. Conyers's claim

---

[18] We note that this memorandum is concerned with the TSA's implementation of the requirements of 49 U.S.C. § 44935(f)(2).

is thus substantively identical to the "class-of-one" equal protection claims recently and explicitly disapproved by the Supreme Court, at least in the employment context, in Engquist v. Oregon Department of Agriculture, 128 S. Ct. 2146 (2008), a case decided after briefing on this appeal was complete. The "class-of-one" theory holds that "the Equal Protection Clause forbids public employers from irrationally treating one employee differently from others similarly situated, regardless of whether the different treatment is based on the employee's membership in a particular class." Id. at 2150. Engquist rejects this theory, holding that the "traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications, combined with unique considerations applicable when the government acts as employer as opposed to sovereign, lead us to conclude that the class-of-one theory of equal protection does not apply in the public employment context." Id. at 2151. Because Conyers, like Engquist, does not assert an employment-related equal protection claim arising out of his membership in any particular group, but rather a claim based upon a general allegation that an agency "treated a[] [prospective] employee differently from others for a bad reason, or for no reason at all," id. at 2156, his equal protection claim cannot survive defendant's motion to dismiss.

III.  **Conclusion**

To summarize, we conclude:

(1)  plaintiff's claim that the TSA Administrator was required to utilize the FAA's personnel management system in deciding whom to "employ" or "appoint" as a security

screener is not reviewable under the APA, but rather, pursuant to Section 111(d) of the ATSA, 49 U.S.C. § 44935 note, has been "committed to agency discretion by law," 5 U.S.C. § 701(a)(2);

(2) defendant is entitled to judgment on the pleadings as to plaintiff's VEOA and due process claims because the veterans' preference statutes from which plaintiff seeks to benefit are not applicable in light of Section 111(d) of the ATSA; and

(3) defendant is entitled to judgment on the pleadings on plaintiff's equal protection claim because it does not arise out of his membership in any particular group and, thus, fails under Engquist v. Oregon Department of Agriculture, 128 S. Ct. 2146.

Accordingly, the district court's judgment of dismissal is AFFIRMED.